W. S. MOSES and David A. New, Appellants,

v.

Fred MICHAEL, Appellee.

W. S. MOSES and David A. New, Appellants,

v.

Robert BAIRD et al., Appellees.

W. S. MOSES and David A. New, Appellants,

v.

W. D. GARDNER et al., Appellees.

No. 18627–18629.

United States Court of Appeals
Fifth Circuit.

July 20, 1961.

Rehearing Denied Sept. 6, 1961.

Earl T. Thomas, W. Calvin Wells, Jr., Thomas H. Watkins, Elizabeth Grayson, Jackson, Miss., Watkins & Eager, Wells, Thomas & Wells, Jackson, Miss., Graham H. Hicks, Natchez, Miss., Fred Anderson, Gloster, Miss., of counsel, for appellants.

W. C. Keady, Fred C. DeLong, Jr., Greenville, Miss., Bernard W. N. Chill, Jackson, Miss., Walter P. North, Atty., S. E. C., Washington, D. C., Farish, Keady & Campbell, Greenville, Miss., of counsel, for appellees.

Ellwood L. Englander, Sp. Counsel, Theodore H. Focht, Atty., Washington, D. C., amicus curiae.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and DE VANE, District Judge.

DE VANE, District Judge.

These appeals involve twenty-three individual suits filed in the United States District Court for the Northern District of Mississippi. The several suits are to recover the purchase price of undivided working interests in certain oil and gas leases, situated in Louisiana, which interests were allegedly sold in violation of the Securities Act of 1933, 15 U.S.C.A. § 77a, et seq., 48 Stat. 74.

After discovery proceedings were had, appellees sought summary judgments under Section 12(1) of the Act, 15 U.S.C.A. § 77l(1). The Court below granted summary judgments and appellants have prosecuted these appeals, which have been consolidated in the three cases enumerated above.

Generally, the sale of these oil and gas leases was accomplished as follows. The purchaser entered into a written letter contract with appellants which provided that the purchaser agreed to buy a specified undivided interest and the seller agreed to assign the said interest as soon as practical. Some time after the execution of the letter agreements, appellants executed a formal assignment of a lease covering each tract and named the numerous purchasers of individual interests as assignees. Appellants then caused the original assignments to be carried from Natchez, Mississippi, to Shreveport, Louisiana, where they were delivered to the Register of Deeds of Caddo Parish, Louisiana, for the purpose of recording as required by the laws of Louisiana. A photostatic copy of each assignment was mailed by appellants to each purchaser.

In their brief counsel for appellants have stated the facts as reflected in the case of Robert Baird v. Moses and New, Civil Action No. 337 below, as found in the record in appeal No. 18,628 of these consolidated appeals. The consolidated cases, with few minor exceptions, involve the same facts and there is substantially no dispute as to the facts in the several cases. The pleadings in all of the cases, except for names, dates, amounts and leases assigned, are identical.

Since the Baird case has been used by appellants for a fuller statement of the facts involved in these cases, the Court will follow the same procedure for a more detailed statement of the facts involved.

The complaint of Baird was filed in the Court below on October 20, 1959. Jurisdiction was allegedly based on Title 15 U.S.C. §§ 77 and 78. The complaint alleged that the defendants, appellants here, were engaged in the sale of securities, including undivided interests in oil and gas rights upon lands located in Caddo Parish, Louisiana. The complaint further alleged that on September 2, 1958, an agent of defendants induced plaintiff to enter into a contract for the purchase of an undivided 1/64 working interest in the Brooks No. 1 lease located in the Greenwood-Waskom

Field, Caddo Parish, Louisiana, and on that date plaintiff personally delivered to the defendants his check for the amount of $570, the full consideration for the lease expressed in the contract. The complaint then alleges that on or about October 28, 1958, appellants executed an assignment of the various fractional interests which they had contracted to sell by the prior letter agreements to appellee Baird and others interested in the Brooks No. 1 lease.

The record in the cases discloses that when the letter agreements were entered into between the several appellees and the appellants the appellants did not control the lands in question and did not acquire control of the same until twenty-two days after appellee Baird entered into the letter agreement for the purchase of the interest acquired by him in the lands in question.

In every case on these appeals the sequence of events was the same as in the Baird case. First, letter agreements were made; next, appellants acquired the interest which they had already contracted to sell in fractional parts; next, the assignments were executed; next, photostatic copies of the assignments were mailed to appellees and the original assignments were sent by appellants from Mississippi to Louisiana and recorded. In every case involved in these appeals, the execution of assignments, the mailing of copies thereof, and the transportation of the original assignments from Mississippi to Louisiana took place within one year prior to the filing of the complaints.

Appellants concede they never filed any registration statement with the Securities and Exchange Commission.

Sections of the Act Involved.

The Securities Act of 1933, 15 U.S.C.A. § 77a et seq., was designed "to provide full and fair disclosure of the character of the securities sold in interstate and foreign commerce and through the mails and to prevent fraud in the sale thereof * * * *". In keeping with this broad purpose the Act defines, in Section 2(1), the term "security" as follows:

"When used in this title, unless the context otherwise requires—

"(1) the term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

The Act affords protection to the investing public by requiring in Section 5 the filing with the Commission of a registration statement containing material facts bearing upon the investment merit of securities which are publicly offered or sold through the use of the mails or through the instrumentalities of interstate commerce. Section 5 of the Act provides in part as follows:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

Persons who sell securities in violation of the registration requirements are liable under Section 12(1) of the Act to their purchasers, who may recover the consideration paid for the securities purchased with interest, less the amount of any income received thereon, upon the tender of the securities or, if they no longer own the securities, then they may recover their damages. Section 12(1) provides as follows:

"Any person who—

"(1) offers or sells a security in violation of Section 5 * * *

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

Section 13, as amended by Section 207, 48 Stat. 908, provides:

"No action shall be maintained to enforce any liability created under * * * Section 12(1) unless brought within one year after the violation upon which it is based."

### Assignment of Errors.

1. Appellants first contend that while the purchase letter agreement may be classified as an "investment contract" between the parties, its execution and delivery constituted no violation of the Securities Act for the reason that the delivery of the contracts to appellees occurred entirely in Mississippi without the use of the mails or any other means or instrumentalities of interstate commerce and was, therefore, not a violation of the Act.

It is clear from the records in these cases that the letter agreements between the parties were merely executory contracts for the later assignment of fractional undivided interest in the various oil and gas leases. In Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88, and in Securities and Exchange Commission v. W. J. Howey Co. et al., 328 U.S. 293, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244, the Supreme Court

put to rest for all time any such microscopic analysis of various steps taken in cases such as these. The Court in the Howey Co. case said:

"The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. If that test be satisfied, it is immaterial whether the enterprise is speculative or non-speculative or whether there is a sale of property with or without intrinsic value. * * The statutory policy of affording broad protection to investors is not to be thwarted by unrealistic or irrelevant formulae."

The letter agreements between the parties were clearly executory contracts for the later assignment of fractional undivided interest in the various oil and gas leases. The Supreme Court made this clear in the Howey Co. case when it said:

"The legal issue in this case turns upon a determination of whether, under the circumstances, the land sales contract, the warranty deed and the service contract together constitute an 'investment contract' within the meaning of Section 2(1). An affirmative answer brings into operation the registration requirements of Section 5(a), unless the security is granted an exemption under Section 3(b)."

The same point was emphasized by this Court in Blackwell et al. v. Bentsen et al., 5 Cir., 203 F.2d 690, 693. There the Court said:

"Though the mails are not alleged to have been used for the purpose of sending out prospectuses or advertising these lands for sale, all deeds and management contracts by which the transactions were consummated were returned by the vendors to the purchasers through the mails. We are aware of the conflict in the authorities on the subject, but in our opinion this is a sufficient use of the mails to bring the case within section 12(2) of the Act. This is a remedial statute. It should be liberally construed to accomplish the dominant legislative purpose in adopting it, which is to prevent the use of the mails, and other instrumentalities of interstate commerce, in the perpetration of investment frauds. * * * Here the sales were apparently by oral communication, but the transactions were consummated by the use of the mails, which in our opinion brings the transaction within the statute."

2. Appellants' next contention is that the execution of the formal assignments by appellants and the mailing of copies thereof to appellees and the transportation of the original assignments from Mississippi to Louisiana by private automobile did not lead to or result in any violation of the Securities Act by appellants, and no act of appellants with reference thereto constitute a delivery of a security by the use of the mails or interstate commerce. This contention is as untenable as their first point.

What the Court has said with reference to the first point is equally applicable here. The formal assignment executed by appellants to the several appellees was clearly a security within the meaning of the Act. The appellants being required by law to file the original of the assignments with the Register of Deeds, Caddo Parish, Louisiana, the transportation of said assignments from Mississippi to Caddo Parish, Louisiana, by private automobile clearly brought the act of appellants within the boundary limits of the Securities Act. The mailing of a certified copy of each assignment to each appellee was as effective insofar as the Securities Act is concerned as if the original assignment itself had been mailed to the appellees.

That an assignment of a fractional undivided working interest in oil and gas rights is a security within the definition of Section 2(1) of the Act is clearly and uncontrovertably established by decisions of the Supreme Court of the United States in Securities and Exchange

Commission v. C. M. Joiner Leasing Corp., supra and Securities and Exchange Commission v. W. J. Howey Co., supra. An interesting case to the same effect is the recent decision of this Court in D. H. Roe v. United States, 5 Cir., 287 F.2d 435.

■ 3. Appellants next contend that the right of recovery of appellees in each of these cases was conditioned by the Act, which created the right upon the tender of the security to appellants and that there was no sufficient or adequate tender here. The record in the cases discloses that appellants never raised this question in the proceedings below. They did not raise the question in their answers. They are now attempting to raise it here. We think it comes too late, but even disregarding that fact, we find and hold that because of the peculiar circumstances of this case, the only sufficient and adequate tender that could be made was made by each appellee in his bill of complaint. As pointed out above, the original of each security here involved was filed with the Register of Deeds of Caddo Parish, Louisiana, and was in the possession of that official. In each instant case each complaint alleges that plaintiff "tenders said security and working interest to said defendants." The judgment entered in each of the instant cases adjudicated the title to the securities be revested in appellants. Each judgment further recites:

"3. That said plaintiff have a lien upon said securities described in the complaint herein, and the property, income and trust funds arising therefrom, held by the defendants for the payment of this judgment;

"4. That the Court retain jurisdiction of the above civil action for the purpose of disposing of said securities described in the complaint herein, and the property, income and trust funds arising therefrom, for the payment and satisfaction of this judgment."

4. Appellants next contend that appellees cannot charge as being a violation of the Act anything done by appellants in transferring the original assignments to Louisiana, because this action is barred by the statute of limitations, 15 U.S.C.A. § 77m.

The basis for this contention is that when these suits were filed appellees had no knowledge of the fact that appellants had sent the originals of the assignments to the Register of Deeds, Caddo Parish, Louisiana, for recording and keeping as required by Louisiana law and had sent them photostatic copies thereof. This fact was not discovered by appellees until early in the year 1960 and was then only discovered by an affidavit that one of appellants had filed in the case. Appellees promptly amended their complaints in this respect to conform to the information furnished them by appellants. This amendment was filed in February, 1960.

All these suits were filed on or about October 20, 1959. The original complaints all alleged that on or about October 28, 1958, appellants executed the respective assignments and sent them through the mails to the appellees shortly thereafter.

While this point has lost its value in this case by reason of the holding of the Court that the mailing of photostatic copies of the lease agreements to appellees, as well as the sending of the originals of these assignments from Natchez, Mississippi, to Caddo Parish, Louisiana, constituted a violation of the Act, it will be considered and disposed of any way.

■ Appellees contend that Rule 15 (c) of the Federal Rules of Civil Procedure 28 U.S.C.A. permits the amendment filed in this case to relate back to the date of filing of the original complaint. Appellants vigorously contest the accuracy of this claim of appellees. The Court, however, is convinced that appellees are correct and that this amendment filed under Rule 15(c) of the Federal Rules of Civil Procedure related back to the date of the original filings in these cases. It did not touch upon new matter at all. It merely cleared up a confusion that existed from the beginning. Barron and Holtzoff, Federal Practice and Procedure, Vol.

1, Sec. 448; Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 65 S.Ct. 421, 89 L. Ed. 465; Barthel v. Stamm, 5 Cir., 1944, 145 F.2d 487.

The judgment of the District Court in each case is

Affirmed.