Craig P. FOLSE, et al.

v.

**COMBINED EQUITIES, et al.**

Civ. A. No. 82–2198.

United States District Court,
W.D. Louisiana,
Monroe Division.

Aug. 15, 1984.

Jerald R. Harper, Cook, Yancey, King & Galloway, Shreveport, La., Hayes, Harkey, Smith & Cascio, Joseph D. Cascio Jr., Monroe, La., Law, Snakard & Gambill, Robert F. Watson, H. Allen Pennington Jr., Fort Worth, Tex., for plaintiffs.

Hudson, Potts & Bernstein, Jesse D. McDonald, Monroe, La., for Johnston.

Robert G. Jackson, Baton Rouge, La., for Combined Equities, Inc., Combined Investments, Ltd., Combined Equity Properties, Inc., Combined Securities, Inc., Hardy Swyers, Robert Jackson and Glenn Bodin.

W. Craig Henry, Monroe, La., for O.N.B. of Monroe.

Andrus, Preis & Kraft and James O. Salley, Lafayette, La., and Preis, Crawford, Scheffy, Mauldin & Ryan, Phillip W. Preis, Baton Rouge, La., for North River Ins. Co. & Johnston.

## RULING

NAUMAN S. SCOTT, District Judge.

This matter is before us on a Motion to Dismiss pursuant to Rule 12(b)(6), Fed.R. Civ.P., filed by the defendants David L. Johnston, Johnston, Lowery & Grace, and North River Insurance Company. These defendants contend that we should dismiss plaintiffs' claim under § 12(1) of the Securities Act of 1933, 15 U.S.C. § 77$l$(1), because it is untimely under § 13 of the Act, 15 U.S.C. § 77m. Having considered counsel's briefs and the applicable law, we dispose of this matter as follows.

The relevant allegations in plaintiffs' First Amended Complaint are accepted as true:

(1) On August 24, 1981, plaintiffs received a prospectus offering the sale of limited partnership interest in Combined Investments, Ltd. This prospectus was delivered by Combined Equities, Inc. and its affiliated business organizations. It represented Combined Properties as the general partner in a "blind pool" real estate venture. This offer of sale was preceded by telephone contacts.

(2) Plaintiffs consulted their accountant, David L. Johnston, and his firm, Johnston, Lowery & Grace, in connection with this offer of sale. On September 11, 1981, plaintiffs signed a subscription agreement to purchase one unit of Class B partnership interest for the sum of $250,000.00 in accordance with Mr. Johnston's advice. As consideration for the sale, plaintiff executed a personal check in the amount of $20,000.00 payable to Combined Investments, Ltd., an installment note of $30,-000.00, and a letter of credit drawn on the Ouachita National Bank in the amount of $200,000.00. After signing the subscription agreement, the plaintiffs tendered this consideration to an escrow agent for the offerors.

(3) The subscription agreement (see Plaintiffs' original complaint, Exhibit G) provided that the monies tendered would be placed in escrow pending the sale of the remaining partnership interest in Combined Investments, Ltd. The agreement also provided that the seller could revoke the sale, in which case plaintiffs would receive the tendered purchase price without interest. In addition, by signing the agreement, the plaintiffs appointed two individuals as attorneys-in-fact to form the limited partnership when the requisite units were sold.

(4) On September 14, 1981, the subscription agreement and the other documents were accepted by the seller's escrow agent. Approximately one week later, the general partner, Combined Properties, Inc., accepted an acknowledgment by David L. Johnston that he would act as plaintiffs' offeree representative. As an offeree representative, Mr. Johnston warranted that he had no financial interest in the sale of the limited partnership interest offered by Combined Equities and its affiliated companies.

(5) On September 23, 1981, the Articles of Partnership of Combined Equities, Ltd. were filed with the Secretary of State. During the next month and a half, plaintiffs were informed by letter that certain documents were missing from their closing package, and they were requested to furnish them to Combined Equities. In addition, plaintiffs also received an additional request for a $15,000.00 payment to Combined Investments in accordance with the terms of the installment. Finally, on December 4, 1981, the defendants delivered by mail a copy of the plaintiffs' certificate of ownership in Combined Investments, Ltd. (Plaintiffs' original complaint, Exhibit G). This letter was headed: "Re: Admission into Combined Investments, Ltd.—a Louisiana Partnership". After salutation, the letter reads as follows:

"This is to notify that you have been accepted as a Class B limited partner in Combined Investments, Ltd. To confirm your purchase of a Class B limited partnership interest, we have enclosed the following:

(1) A complete copy of the closing package,

(2) A copy of the certificate of ownership held by us under pledge reflecting your ownership interest in the partnership.

"On behalf of the general partner, we would like to welcome you into the limited partnership.

/S/ Laura Amede

Compliance Assistant"

(6) On December 11, 1981, plaintiffs received another letter from the defendants which related to the sales transaction. The plaintiffs, however, did not receive any other communication from the defendants until on or about March 7, 1982, at which time the defendants solicited additional capital contributions by mail for the continuing finance of Combined Investments.

On September 3, 1982, the plaintiffs filed this lawsuit against Combined Equities, its affiliated companies, and various individuals, to recover the purchase price paid for the partnership interest. By amended complaint filed November 2, 1982, the plaintiffs realleged their prior cause of action under § 12(1) with more particularity and added the present movers as defendants. Plaintiffs' discovery disclosed that David Johnston and his firm may have received compensation from Combined Equities or its affiliates in connection with the sale of the partnership interest, despite the disclaimer contained in the offeree representative statement signed by David Johnston. Accordingly, plaintiffs named David L. Johnston, his firm, and his malpractice insurer as additional defendants, and alleged that all defendants violated § 5 of the Act, 15 U.S.C. § 77e, as follows:

"One or more of the defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer for sale the security, to sell the security through the use of the prospectus or otherwise, and to *deliver the security for the purpose of sale and for delivery after sale,* when no registration statement was in effect as to such security." (emphasis added).

(Plaintiffs' First Amended Complaint, ¶ 25).

The defendants argue that the amended complaint was filed more than one year after the plaintiffs signed the subscription agreement to purchase the partnership interest on September 11, 1982, and therefore the action is time barred under § 13 of the Act.

On a Rule 12 Motion to Dismiss for Failure to State a Claim, the rule of construction applicable to plaintiffs' complaint is not complex.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*International Erectors v. Wilhoit Steel Erectors,* 400 F.2d 465, 471 (5th Cir.1968); *see also, Madison v. Purdy,* 410 F.2d 99 (5th Cir.1969). In this case, therefore, we must consider whether the plaintiff can prove any set of facts to demonstrate that the defendants violated § 5 within one year prior to the filing of the plaintiffs' First Amended Complaint.

Our disposition of this matter requires that we focus on the last pertinent activity of the defendants, i.e., the last activity which is alleged to violate § 5. *Hamilton Bank & Trust Co. v. Holliday,* 469 F.Supp. 1229, 1237 (N.D.Ga.1979). As stated in *Doran v. Petroleum Management Corp.,* 576 F.2d 91, 93 (5th Cir.1978), "the relevant inquiry [is] which of the defendant's activities—offer, sale, or delivery—occurred last as that [is] the time from which to measure the limitation period." With these principles in mind, we address the plaintiffs' contentions in support of their claim that their cause of action against the movers did not prescribe.

■ Plaintiffs advance several legal arguments to show that their action is timely. However, we need only consider plaintiffs' primary contention that the use of the mails to send a confirmation of the sale and a certificate of ownership is the last pertinent activity of the defendants which commences the running of the statute of limitations. Plaintiffs contend that they have alleged delivery of the security after the sale as a separate violation of § 5. Because the delivery of the certificate of ownership and the confirmation of the sale occurred less than one year prior to the filing of the First Amended Complaint, the

action under § 12(1) is timely. For the following reasons, we agree.

The applicable law is succinctly stated as follows:

"Section 13 of the Act, in part, provides: 'No actions shall be maintained ... to enforce a liability created under § 77(L)(1) of this title, unless brought within one year after the violation upon which it is based.' 15 U.S.C. § 77(m) (1963). Thus, a cause of action based upon § 5(a) of the Act accrues at the time § 5(a) is violated, and the plaintiff has a period of one year from the time the section is violated in which to bring suit.

"Section 5(a) is violated when a person, directly or indirectly, makes use of any means or instrument of interstate commerce or of the mail to sell a security or carries the security or causes it to be carried through the mails or through instruments of interstate commerce for the purpose of sale or for delivery after sale. Thus, it is clear that if the seller uses the mails or an instrument of interstate commerce *to effectuate any one of the stages of the sales transaction or for delivery after sale,* he violates the Act." (emphasis added).

*Bryant v. Uland,* 327 F.Supp. 439, 443–44 (S.D.Tex.1971).

 Therefore, § 5 proscribes more than the use of the mails to effect the sale of an unregistered security. For example, the use of the mails to confirm the sale of an unregistered security violates § 5. *United States v. Pollack,* 534 F.2d 964 (D.C.Cir. 1976); *United States v. Wolfson,* 405 F.2d 779, 783–84 (2nd Cir.1968), *cert. denied,* 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969). Likewise, the mailing of a copy of an unregistered certificate of ownership in a limited partnership also violates § 5. Cf. *Moses v. Michael,* 292 F.2d 614 (5th Cir. 1961).

Here, we find that plaintiffs could show that the mailing of the confirmation of the sale and the certificate of ownership in December of 1981 is a violation of § 5, and therefore it is the last pertinent activity of the defendants from which to measure the limitation period. Further, we find that all defendants alleged to have participated in the sales transaction are chargeable with this alleged violation for purposes of commencing the statute of limitations under § 13. Because we believe the plaintiffs could prove a set of facts to show that the movers are either underwriters or partici-

pants in the sales transaction, the statute of limitations as to them did not begin to run until the mailing of the confirmation of sale and the copy of the certificate of ownership in December, 1981. For these reasons, the action filed on November 2, 1982 is not time barred under § 13.

 In reaching this result, we are particularly mindful that the Federal security statutes are remedial and must be broadly construed. *See, e.g., Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111 (5th Cir.1980), *citing Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 131, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741, 760 (1972).

For the foregoing reasons, the Motion to Dismiss filed by the defendants David L. Johnston, Johnston, Lowery & Grace and North River Insurance Company is hereby DENIED. In accordance with Rule 12(a), Fed.R.Civ.P., the movers have ten (10) days from notice of this action within which to file an answer.