David AMOROSO, et al., Plaintiffs,

v.

**SOUTHWESTERN DRILLING MULTI-RIG PARTNERSHIP NO. 1, et al., Defendants.**

No. C–84–8019 SC.

United States District Court, N.D. California.

Oct. 20, 1986.

Bartlett A. Jackson, Jackson, Tufts, Cole & Black, Michael J. Baker, Jane B. Wishner, San Francisco, Cal., for plaintiffs.

Paul Alexander & Esta L. Brand, Heller, Ehrman, White & McAuliffe, Palo Alto, Cal., for defendant Capital Concepts.

David B. Paynter, Richard Thompson, Margaret Keefe, Erickson, Arbuthnot, Walsh, Paynter & Brown, San Francisco, Cal., for defendant Southwestern Drilling.

## ORDER RE STATUTE OF LIMITATIONS FOR COUNT THREE

CONTI, District Judge.

Defendant Southwestern Drilling and related parties solicited investors for an oil drilling project in Oklahoma. Plaintiffs are thirty-one investors who responded to the solicitation. Defendant Capital Concepts organized the formation of a limited partnership. Southwestern Drilling, Southwestern Drilling Co., and Southwestern Drilling Management Co. comprised the general partner. Plaintiffs were the limited partners. The limited partnership was named Southwestern Drilling Multi-Rig Partnership No. 1. As part of the Partnership Agreement, each plaintiff agreed to pay a share of the partnership's debt. The partnership has gone bankrupt. Plaintiffs claim they were fraudulently induced into investing. Plaintiffs sue for damages and for rescission. They have named thirteen defendants.

In its order of August 8, 1986, the court denied a motion to dismiss brought by defendant Southwestern Drilling. Among other things, the court stated that plaintiffs have satisfied the statute of limitations for Count Three. Order Denying Southwestern Drilling's Motion To Dismiss, p. 5. Several defendants have asked the court to reconsider this portion of the court's order. Southwestern Drilling moves for reconsideration. John L. Wright, William R. Dixon and Capital Concepts Investment Corp. ("the Capital Concepts defendants") move for reconsideration, for dismissal, or for summary judgment. In this order the court reconsiders whether plaintiffs have satisfied the statute of limitations for Count Three.

### THE STATUTE OF LIMITATIONS

Count Three states a claim under Section 12(2) of the 1933 Act. Southwestern Drilling and the Capital Concepts defendants argue that plaintiffs failed to satisfy the statute of limitations. The statute provides as follows:

> No action shall be maintained to enforce any liability created under section [11 or 12(2)] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... *In no event* shall any such action be brought to enforce a liability created ... under section [12(2)] of this title more than *three years* after the *sale*.

15 U.S.C. § 77m (emphasis added). "[T]he statutory language requires the conclusion that Congress meant the bar to be absolute...." *SEC v. Seaboard Corporation*, 677 F.2d 1301, 1308 (9th Cir.1982) (granting summary judgment to defendants on a § 12(2) claim).

Plaintiffs filed their Complaint on December 26, 1984. Defendants argue that the sale of partnership interests took place on December 16–24, 1981. Plaintiffs argue that the sale of partnership interests took place on December 29, 1981. The court must determine the precise date of sale.

Several courts have determined the precise date of the "sale" of securities for other purposes. *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876 (2d Cir. 1972) is the leading case. *Radiation Dynamics* involved a claim that certain inside information was material under Rule 10b–5. The parties disputed the date on which materiality was to be tested. The district court instructed the jury that "the time of a 'purchase or sale' of securities within the meaning of Rule 10b–5 is to be determined as the time when the parties to the transaction are committed to one another." 464

F.2d at 891. The Second Circuit upheld this instruction. It explained:

> "Commitment" is a simple and direct way of designating the point at which, in the classical contractual sense, there was a meeting of the minds of the parties; it marks the point at which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time.

464 F.2d at 891. In *Radiation Dynamics*, "sale" took place on the date of contractual "commitment", not the date of "formal performance".

■ The *Radiation Dynamics* test applies to fix the date of materiality in actions under § 12(2). *See Hill v. Equitable Bank*, 599 F.Supp. 1062, 1072 (D.Del.1984) (the test applies "[i]n general . . . under the federal securities laws"). This court will apply a similar test to determine when the three-year limitations period began.

■ The court determines that the limited partnership interests were "sold" when the parties entered a binding contract for their sale.

> The term "sale" or "sell" shall include every contract of sale or disposition of a security or interest in a security, for value.

15 U.S.C. § 77b(3). The three-year limitations period began to run on the date the parties entered a binding contract.

## SEQUENCE OF EVENTS

The court now reviews the formation of the contract.

46. Beginning in or about the summer of 1981, Defendants Southwestern Drilling, S.W. Drilling Co., S.W.D. Management Co., Schones, Yoeckel, Bernstein, Dixon, Gee, Wright and Capital Concepts undertook a plan to solicit investors to finance the purchase of one or more oil drilling rigs for use in Oklahoma. In late 1981, pursuant to this plan, the Southwestern Defendants prepared a document entitled "Southwestern Drilling Multi-Rig Partnership No. 1—A Private Offering of Limited Partnership Interests—December 17, 1981" ("Offering Memorandum").

.     .     .     .     .

48. The Offering Memorandum was distributed to plaintiffs and other persons on or after December 17, 1981. In order to participate in the Partnership as limited partners, investors, including the plaintiffs herein, were required to and did do the following: (a) signed a "Subscription Page" which provided that its execution constituted execution by an investor of a Limited Partnership Agreement ("Limited Partnership Agreement"); (b) paid to Defendant Southwestern Drilling Multi-Rig Partnership No. 1, and/or to Southwestern Drilling, as the general partner, cash in the aggregate sum of $1,410,000; (c) caused letters of credit to be issued by their respective banks payable to Defendant CCB in the aggregate sum of $2,820,000; and (d) signed a document entitled "Investor Assumption Agreement" in favor of the Partnership relating to, among other things, bank loans the Partnership intended to obtain from Defendant CCB. Plaintiffs performed each of the foregoing obligations prior to December 31, 1981.

Each investor signed a Subscription Page and mailed it to Southwestern Drilling. Bill Schones countersigned the same page in his capacity as President of Southwestern Drilling Management Company. Southwestern Drilling then activated the partnership by filing the appropriate documents with the Oklahoma Secretary of State.

There are three candidates for the date of "sale": (1) the date an investor signed the Subscription Page; (2) the date Southwestern Drilling countersigned the Subscription Page; and (3) the date Southwestern Drilling activated the partnership.

(1) Plaintiff Truman Miller signed the Subscription Agreement on December 27, 1981. Each of the other plaintiffs signed between December 16 and December 24,

1981. Capital Concepts Memorandum, Ex. A; Declaration of Esta L. Brand, Ex. A.

(2) Defendant Schones countersigned each plaintiff's Subscription Page on behalf of Southwestern Drilling. A date appears above Schones's signature. For four of the plaintiffs, the date is after December 26, 1981. For one of the plaintiffs, the date is December 26, 1981. For the remaining 26 plaintiffs, the date is before December 26, 1981. Plaintiffs argue, however, that these dates are not trustworthy and may not accurately represent the date Schones signed. (See below.)

(3) Southwestern Drilling activated the partnership on December 29, 1981.

When an investor signed the Subscription Page, he made an irrevocable offer to purchase a limited partnership interest. The investor's signature alone did not create a contract of sale, because Southwestern Drilling was not yet bound. The Subscription Page itself implies that Southwestern Drilling was not yet bound:

> The undersigned hereby subscribes the amount set forth below to Southwestern Drilling Multi-Rig Partnership No. 1. *If this Subscription is accepted by SWD,* the undersigned hereby executes and agrees to all of the terms of the Limited Partnership Agreement....

Declaration of Esta L. Brand, Ex. A (emphasis added). The Limited Partnership Agreement expressly provides that Southwestern Drilling was not yet bound:

> 3.01 *Subscription by PARTICIPANTS.* The Partnership shall not be formed and any payments shall be returned unless commitments for Subscriptions aggregating a minimum of $7,040,000 are received and accepted by SWD by December 31, 1981.... *Acceptance of Subscriptions to the Partnership shall be discretionary with SWD,* and *SWD may accept or reject any Subscription ... at any time prior to activation of the Partnership, for any reason it deems appropriate,* without incurrng any liability.

Declaration of Jane B. Wishner, Ex. A (emphasis added).

Under this express provision of the Limited Partnership Agreement, Southwestern Drilling remained free to reject an investor's subscription after the investor had signed. Therefore the investor's signature did not complete the formation of a contract.

Plaintiffs argue that the sale was not completed until Southwestern Drilling activated the partnership. Plaintiffs argue that a "sale" requires an "irrevocable commitment" by both parties. So long as the transaction remained contingent on certain conditions, plaintiffs argue, there was no "sale". Plaintiffs cite three 10b–5 cases, *Goodman v. Poland,* 395 F.Supp. 660, 691 (D.Md.1975), *SEC v. National Student Marketing Corp,* 457 F.Supp. 682, 704 (D.D.C.1978), and *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 812 (9th Cir.1981). In each of these three cases, the court held that "sale" was not complete when the purchaser entered a preliminary agreement, contingent on certain conditions. In each of these three cases, the court held that "sale" was complete only when the purchaser entered an "irrevocable commitment". In the present case, each *purchaser* entered an irrevocable commitment as soon as he signed the Subscription Page. Only Southwestern Drilling—the *seller*—remained free to withdraw. Thus the three cases cited do not support plaintiffs' argument.

Plaintiffs also point to § 3.01 of the Limited Partnership Agreement. This provision gave Southwestern Drilling the power to accept or to reject each investor's subscription at any time prior to activation. In fact, however, Southwestern Drilling chose to accept each plaintiff's subscription. Bill Schones accepted the subscriptions on behalf of Southwestern Drilling by signing the Subscription Pages, as follows:

> ACCEPTED this __ day of [December], 1981.

Southwestern Drilling, By its General Partner: Southwestern Drilling Management Company

By: [Bill S. Schones] [signature]

Declaration of Esta L. Brand, Ex. A. Once Southwestern Drilling accepted an investor's subscription, Southwestern Drilling lost the discretion to reject that subscription. Therefore contract formation was completed before Southwestern Drilling activated the partnership.

■ The court determines that each investor's limited partnership interest was "sold" on the date that Southwestern Drilling accepted his subscription. Once an investor had offered to subscribe, and Southwestern Drilling had accepted his subscription, the contract was completely formed. The contract created rights and duties. Many of these were contingent on the receipt of further funds. If Southwestern Drilling received at least $7,040,000 in subscriptions, Southwestern Drilling was to activate the Partnership. If Southwestern Drilling did not receive at least $7,040,000 in subscriptions, Southwestern Drilling was not to activate the Partnership. Nonetheless, once both the investor and Southwestern Drilling had signed the Subscription Page, there came into being a mutually enforceable contract. Provided Southwestern Drilling did receive at least $7,040,000 in subscriptions, the investor now had a legally enforceable right to purchase a limited partnership interest. Although "the formal performance of their agreement [was] to be after a lapse of time," the parties now had "a meeting of the minds." *See Radiation Dynamics*, 464 F.2d at 891.

## THE DATE OF ACCEPTANCE

Southwestern Drilling accepted each investor's subscription on the date Bill Schones signed the Subscription Page. The date of acceptance is different for each plaintiff. Plaintiffs argue that the court should not rely on the dates written above Bill Schones's signature on each Subscription Page.

■ Pamela S. Fox of Capital Concepts assembled the documents in San Francisco. Declaration of Pamela S. Fox, ¶ 3. According to plaintiffs, Bill Schones was in Oklahoma on the purported date of signing, while the documents were still in San Francisco. Therefore, plaintiffs argue, the purported date of signing may be false. Plaintiffs' argument fails, however, because Pamela S. Fox sent the partnership documents to Oklahoma by Express Mail on a daily basis. Declaration of Pamela S. Fox, ¶ 5.

Plaintiffs argue that Schones may have falsified the dates.

... the integrity of Bill Schones is a central issue in this case. The complaint alleges, among other things, that Schones was a convicted felon and was taking kickbacks on purchases by Southwestern Drilling at the time Multi-Rig was formed, none of which was disclosed to the limited partner investors. Thus, the unauthenticated dating of these documents prior to December 26, 1981 should not be used as a basis to dismiss this claim on statute of limitations grounds until the credibility of Bill Schones on this issue has been tested.

Plaintiffs' Memorandum, p. 13. On the one hand, plaintiffs have not presented any facts to show that the purported dates are false. On the other hand, defendants have not presented any facts to show that the purported dates are correct. The court concludes that it would be premature to grant summary judgment at this time. Plaintiffs state that the facts are not yet fully discovered.

12. Until plaintiffs receive answers to their Fourth Set of Interrogatories and conclude the depositions noticed for the month of October, they will be unable to fully present their case on the issue of whether Bill Schones signed the subscription pages in question on or after December 26, 1981.

Declaration of Jane B. Wishner, ¶ 12.

■ Plaintiffs bear a heavy burden to show that the dates appearing on the Subscription Pages are false. Plaintiffs may be able to carry that burden. Summary judgment is proper only where there is no

genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir.1981); *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 (9th Cir.1980). Since the facts are in dispute, the court does not grant summary judgment at this time. Any party may move for summary judgment on this issue when discovery has been completed.

## MOTION TO DISMISS

The Capital Concepts defendants also move to dismiss Count Three. The Capital Concepts defendants argue that plaintiffs failed to allege that they satisfied the statute of limitations. The court determines that plaintiffs' complaint was adequate, and that plaintiffs have sufficiently set forth their allegations in subsequent declarations. Therefore the court denies the motion to dismiss.

## SUMMARY

The court withdraws its earlier statement that plaintiffs satisfied the statute of limitations on Count Three. The court determines that the limitations period for each plaintiff began to run on the date Bill Schones countersigned that plaintiff's Subscription Page. The dates of countersigning are in dispute, and therefore the court does not grant summary judgment at this time.

In accordance with the foregoing, it is hereby ordered that:

(1) the motion of Southwestern Drilling for reconsideration is granted;

(2) the motion of the Capital Concepts defendants for reconsideration is granted;

(3) the motion of the Capital Concepts defendants to dismiss Count Three is denied; and

(4) the motion of the Capital Concepts defendants for summary judgment on Count Three is denied at this time.