Harding W. MAXWELL, et al., Plaintiffs,

v.

Walker LaBRUNERIE, et al., Defendants.

No. 88–0507–CV–W–9.

United States District Court, W.D. Missouri, W.D.

Dec. 13, 1989.

---

Stewart M. Stein, Buck, Bohm & Stein, P.C., Kansas City, Mo., for plaintiffs.

Carl H. Helmstetter and Stephanie A. Mathews, Spencer, Fane, Britt & Browne, Thomas W. Koelling, Koelling & Crawford, P.C., Kansas City, Mo., and Jack R. Mitchell, Koelling & Crawford, P.C., San Diego, Cal., for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISMISSING CASE

BARTLETT, District Judge.

Plaintiffs are Missouri and Kansas residents who are limited partners in Hidden Creek Investors, Ltd. (Hidden Creek), a Missouri limited partnership formed in 1985 to purchase and manage a commercial office building in Independence, Missouri. The limited partnership was unsuccessful and Hidden Creek general partners, Walker LaBrunerie (Labrunerie) and Timothy J. Brown (Brown) have filed a bankruptcy petition on its behalf.

On May 27, 1988, plaintiffs filed this action against LaBrunerie and Brown alleging in Count I violations of Section 12(2) of

the Securities Act of 1933 codified at 15 U.S.C. § 77*l* (2):

Any person who—

. . .

(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... shall be liable to the person purchasing such security from him. . . .

Under Count I, plaintiffs seek recission and the consideration paid for their interests in Hidden Creek. In Counts II–V, plaintiffs seek declaratory judgments, an accounting and damages for negligence. On March 31, 1989, plaintiffs filed their first amended complaint in which they add no new counts but amend some factual allegations and add new plaintiffs.

On March 1, 1989, defendants filed a motion for summary judgment on Count I of plaintiffs' complaint arguing it fails to state a cause of action and is barred by the one and three year statutes of limitations in 15 U.S.C. § 77m. Defendants also assert that because Counts II–V of plaintiffs' complaint are based on state law claims and are before this court due to pendent jurisdiction, they should be dismissed for lack of subject matter jurisdiction if summary judgment is granted on Count I.

### Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 106 S.Ct. at 2512.

*Defendants' Motion for Summary Judgment on Count I of Plaintiffs' Amended Complaint Will be Granted*

Defendants argue that the statutes of limitations in 18 U.S.C. § 77m (1981) bar the claim alleged under § 77*l* (2).

> No action shall be maintained to enforce any liability created under … 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence…. In no event shall any action be brought to enforce a liability under … section 77*l* (2) of this title more than three years after the sale.

■ Both the wording of § 77m and subsequent judicial interpretation establish that the three year period of limitations is absolute, i.e., not subject to equitable tolling. *Admiralty Fund v. Hugh Johnson and Co.*, 677 F.2d 1301, 1308 (9th Cir.1982); *Summer v. Land and Leisure, Inc.*, 664 F.2d 965, 968 (5th Cir.1981); *Armbrister v. Roland International Corp.*, 667 F.Supp. 802–23 (M.D.Fla.1987); *Antinore v. Alexander and Alexander Services*, 597 F.Supp. 1353, 1356 (D.Minn.1984); *Brick v. Dominion Mortgage and Realty Trust*, 442 F.Supp. 283, 289–91 (W.D.N.Y.1977); *Cowsar v. Regional Recreation, Inc.*, 65 F.R.D. 394, 397 (M.D.La.1974).

Relying on the same facts, the parties disagree about when the three year statute of limitations began to run.[1] The following facts bearing on the application of the three year statute of limitations are undisputed.

Hidden Creek Investors Ltd., a Missouri limited partnership, was created on March 22, 1985. Each plaintiff signed a Subscription Agreement "evidenc[ing] the agreement of the undersigned subscriber to become a limited partner … of Hidden Creek Investors Ltd. … under the terms of the offer contained in the Private Placement Memorandum dated April 5, 1985…." In paragraph two, the following language appears:

> Simultaneously with the execution and delivery hereof, Subscriber submits a personal or certified check, bank check or money order payable to the order of the "Hidden Creek Investors, Ltd. Escrow Account," representing his Capital Contribution, or cash portion thereof, in the event this Subscription is accepted and he is admitted as a Limited Partner.

In paragraph six additional reference is made to the necessity of acceptance of the subscription by the general partners: "Upon acceptance of this subscription by

1. Plaintiffs argue that the defendants' motion for summary judgment is premature because there had not been full discovery before the motion was filed. Plaintiffs never requested an opportunity to conduct discovery to oppose the motion for summary judgment. Furthermore, plaintiffs have had an opportunity to conduct discovery while the motion for summary judgment has been pending. No request has been received to supplement the plaintiffs' factual presentation. Accordingly, I conclude that plaintiffs have no objection to ruling defendants' motion for summary judgment on the record presented.

the General Partners on behalf of the Partnership, recordation of an Amendment to the Certificate of Limited Partnership and release of subscription funds from the escrow accounts, the Subscriber shall become a Limited Partner for all purposes."

On the Subscription Agreement signature page, each plaintiff signed, between April 24, and May 9, 1985, beneath a statement containing the following sentence: "The undersigned agrees to be bound by the terms of this offering, this Subscription Agreement and the Agreement."

At the bottom of the Subscription Agreement signature page, the following appeared: "SUBSCRIPTION ACCEPTED THIS ____ [2] DAY OF MAY 1985 /s/ Timothy J. Brown, General Partner"

Brown countersigned each Subscription Agreement no later than May 10, 1985.[3] Sometime after June 7, 1985, each plaintiff received by mail a certificate of limited partnership dated May 31, 1985, enclosed with a letter dated June 7, 1985, stating in part: "In conjunction with this purchase, the Corporate General Partner, Citadel Properties, Inc., and the Individual General Partners, Walker LaBrunerie and myself, are pleased to inform you that your Subscription Agreement as a Limited Partner in the Hidden Creek Investors Limited Partnership has been accepted." In addition, another letter dated June 7, 1985, advised each plaintiff of the taxpayer identification number for the partnership.

The complaint in this case was filed on May 27, 1988.

Defendants argue that the three year statute of limitations began to run when all Subscription Agreements were countersigned by Brown, a date no later than May 10, 1985. If defendants are correct, plaintiffs have not complied with the three year statute of limitations.

On the other hand, plaintiffs assert that the statute began to run when plaintiffs received written notification of acceptance into the partnership, a date not earlier than June 7, 1985. If plaintiffs are correct, they complied with the three year statute of limitations.

Because no relevant factual issues are disputed, the determination of whether plaintiffs complied with the three year limitation is a question of law that can be resolved by ruling on a motion for summary judgment. *Buder v. Merrill Lynch, Pierce, Fenner and Smith,* 644 F.2d 690, 692 (8th Cir.1981).

To support plaintiffs' argument that the three year statute should begin to run from the date plaintiffs received written notification of their acceptance into Hidden Creek, plaintiffs rely on *Folse v. Combined Equities,* 592 F.Supp. 559 (W.D.La.1984). In *Folse,* as in this case, limited partners signed Subscription Agreements and later were notified by mail of their acceptance into the partnership. However, the claim discussed in *Folse* was brought under 15 U.S.C. § 77*l* (1) and concerned the one year limitation period of § 77m. Section 77*l* (1) provides a remedy against anyone who "offers or sells a security in violation of section 77e of this title. . . ." Section 77e prohibits the use of interstate commerce for the sale or delivery of an unregistered security. In deciding whether plaintiffs could prove any set of facts demonstrating that defendants violated § 77e within one year before suit was filed, the court stated:

> Our disposition of this matter requires that we focus on the last pertinent activity of the defendants, i.e., the last activity

---

**2.** The Subscription Agreements were accepted between May 1, and May 10, 1985.

**3.** Plaintiffs point out that the subscripton agreement of George S. Postma, trustee of George S. Postma Trust, was not countersigned by Brown. Plaintiffs' Reply to Defendants' Response to Plaintiffs' Opposition to Motion for Summary Judgment at 14–15; Exhibit A. This omission does not preclude consideration of summary judgment due to other uncontroverted facts. Postma signed the Subscription Agreement on May 7, 1985—all other Subscription Agreements signed by investors on or after May 7, 1985, were countersigned by May 10, 1985. Defendants' Motion for Partial Summary Judgment; Index to Attachments; Defendants' Response to Plaintiffs' Opposition, Attachments. Postma wrote a $3,500 check to Hidden Creek dated May 9, 1985, and the check was listed on a Hidden Creek deposit slip dated May 9, 1985. Defendants' Response to Plaintiffs' Opposition, Attachments.

which is alleged to violate § 5. *Hamilton Bank & Trust Co. v. Holliday*, 469 F.Supp. 1229, 1237 (N.D.Ga.1979). As stated in *Doran v. Petroleum Management Corp.*, 576 F.2d 91, 93 (5th Cir. 1978), "the relevant inquiry [is] which of the defendants' activities—offer, sale or delivery—occurred last as that [is] the time from which to measure the limitation period."

*Id.* at 561.

■ The instant case involves the sale of registered, not unregistered, securities and involves the three year limitations period in § 77m, not the one year limitation period. Section 77m, referring to § 77*l*(2), states that "[i]n no event shall any such action be brought to enforce a liability ... under section 77*l*(2) of this title more than three years after the *sale.*" (Emphasis added.) Therefore, the date of sale is the crucial date for determining when the three year statute of limitations applicable to § 77*l*(2) begins to run.

The 1933 Securities Act defines the term "sale" to include "every contract of sale or disposition of a security or interest in a security for value." 15 U.S.C. § 77b(3) (1981).

In *Radiation Dynamics Inc. v. Goldmuntz*, 464 F.2d 876 (2d Cir.1972), the court approved a jury instruction that a purchase or sale occurred for Rule 10b–5 purposes "when the parties to the transaction are committed to each other." *Id.* at 891. To focus on the time when the parties were committed to each other, i.e., entered into a binding contract of sale, is consistent with § 77m's use of the date of "sale" as the beginning of the three year period.

Other courts have reached the same conclusion. For instance, in *Amoroso v. Southwestern Drilling Multi–Rig Partnership I*, 646 F.Supp. 141 (N.D.Cal.1986), a well-reasoned opinion involving facts and issues very similar to those in this case, each investor in the limited partnership signed a subscription page and mailed it to Southwestern Drilling. The president of Southwestern Drilling countersigned the same page for the general partners. "Southwestern Drilling then activated the partnership by filing the appropriate documents with the Oklahoma Secretary of State." *Id.* at 143. The agreement had a contingency, as did the Hidden Creek partnership agreement, that provided for the return of subscriptions if a minimum number were not received by a certain date. The court concluded that "when an investor signed the Subscription Agreement, he made an irrevocable offer to purchase a limited partnership interest." *Id.* at 144.

Once Southwestern Drilling accepted an investor's subscription, Southwestern Drilling lost the discretion to reject that subscription. Therefore contract formation was completed before Southwestern Drilling activated the partnership.

The court determines that each investor's limited partnership interest was "sold" on the date that Southwestern Drilling accepted his subscription. Once an investor had offerred to subscribe, and Southwestern Drilling had accepted his subscription, the contract was completely formed. The contract created rights and duties. Many of these were contingent on the receipt of further funds. If Southwestern Drilling received at least $7,040,-000 in subscriptions, Southwestern Drilling was to activate the Partnership. If Southwestern Drilling did not receive at least $7,040,000 in subscriptions, Southwestern Drilling was not to activate the Partnership. Nonetheless, once both the investor and Southwestern Drilling had signed the Subscripton Page, there came into being a mutually enforceable contract. Provided Southwestern Drilling did receive at least $7,040,000 in subscriptions, the investor now had a legally enforceable right to purchase a limited partnership interest. Although "the formal performance of their agreement [was] to be after a lapse of time," the parties now had a "meeting of the minds." *See Radiation Dynamics*, 464 F.2d at 891.

*Id.* at 145. *See also Hill v. Equitable Bank*, 599 F.Supp. 1062, 1072 (D.Del.1984) where the court concluded that a sale of securities occurs when parties enter into "a binding commitment to undertake a securi-

ties transaction, even though full performance of the transaction does not occur until a later date." " 'Commitment' is a simple and direct way of designating the point at which, in the classic contractual sense, there was a meeting of the minds of the parties; it marks the point at which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time." *Radiation Dynamics v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir.1974).

Plaintiffs argue they did not accept defendants' offer for sale of Hidden Creek securities until they received written notification of their acceptance into the partnership. In support of plaintiffs' argument that no contract was formed until they received written notification of their acceptance as limited partners, plaintiffs present the following undisputed facts:

1) Certificates of limited partnership were dated May 31, 1985, and received by plaintiffs in a letter dated June 7, 1985. Plaintiffs' response; Exhibits A, B, C, D, I, J, K.

2) The June 7, 1985, letter sent by the general partners states that we "are pleased to inform you that your Subscription Agreement as a Limited Partner in the Hidden Creek Investors Limited Partnership has been accepted, ..." and "we are enclosing ... [a] copy of the Subscription Agreement, which is the legal evidence of your admission to the Partnership, ..." Plaintiffs response; Exhibits D, I, J, K.

3) The general partners sent a second letter dated June 7, 1985, advising plaintiffs of the taxpayer identification number of Hidden Creek and the tax shelter registration number. Plaintiffs' response; Exhibit L.

4) The Confidential Private Placement Memorandum states that the offering would terminate if 18 units were not subscribed on or before May 31, 1985. Plaintiffs' response; Exhibit M.

5) The Subscription Agreement states that this "agreement may be accepted on behalf of the Partnership by the General Partners by executing it in the space provided below and mailing a duplicate copy to the Subscriber...." Plaintiffs' reply, Exhibit B.

■ Here, a mutually enforceable contract was created when general partner Brown countersigned by May 10, 1985, the Subscription Agreements accepting the plaintiffs' offer to purchase limited partnership interests. Therefore, the "sale" triggering the three year statute of limitations occurred no later than May 10, 1985.

The events that were required before plaintiffs became limited partners, *e.g.*, release of the funds from escrow and furnishing an executed copy of the Subscription Agreement effectuated the binding agreement created when the Subscription Agreement was accepted by a general partner. Because this action was not initiated within three years thereafter, plaintiffs are barred by the absolute three year statute of limitations in § 77m from bringing an action under § 77*l* (2).

Accordingly, defendants' motion for summary judgment on Count I will be granted.

*Defendants' Motion for Dismissal of Counts II–V Will be Granted*

This court's jurisdiction over plaintiffs' state law claims requires the exercise of pendent jurisdiction. Pendent jurisdiction should be exercised only when a) the court has the "power" to hear the state law claim and b) it is appropriate, under the circumstances of the case, for the court to exercise its discretion to consider the pendent claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1986); *see also Vanderboom v. Sexton*, 422 F.2d 1233, 1242 (8th Cir.1970), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1976).

■ This court has the "power" to hear plaintiffs' state law claims even though summary judgment has been granted on their one federal claim. *See Rheuport v. Ferguson*, 819 F.2d 1459, 1467 n. 13 (8th Cir.1987) ("where a plaintiff pleads a substantial federal claim, the federal courts may retain jurisdiction over pendent state claims even if the federal claim is dis-

missed, dropped, or otherwise fails at or before trial...."").

Although this court has the power to hear plaintiffs' state law claims, it would be an inappropriate exercise of discretion to do so.

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law.

*United Mine Workers of America v. Gibbs,* 86 S.Ct. at 1139 [footnotes omitted].

■ Here, considerations of judicial economy, convenience and fairness to the litigants have not been shown. Plaintiffs' state law claims are best left to the state courts thereby avoiding a needless decision of state law by this court. Therefore, pendent jurisdiction will not be exercised over the claims asserted in Counts II–V.

### Order

Accordingly, it is hereby ORDERED that:

1) defendants' motion for summary judgment on Count I of plaintiffs' first amended complaint is granted;

2) defendants' motion for dismissal of Counts II–V of plaintiffs' first amended complaint is granted; and

3) this case is hereby dismissed at plaintiffs' costs.