*425 OPINION OF THE COURT
Jane S. Solomon, J.
In these 16 proceedings, petitioner Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) seeks to stay, permanently, arbitration proceedings brought by the respondents before the National Association of Securities Dealers (NASD).[1] The petitions each allege that respondents’ claims are ineligible for submission to arbitration under section 15 of the NASD Code of Arbitration Procedure because they are based on investments made over six years before arbitration was sought. The respondents, in turn, move to dismiss the petitions[2] and to compel arbitration.
The simple question before me is, when is it that a limited partnership investment is acquired if the purchase of same is the occurrence or event which gives rise to a respondent’s claim. The issue here is whether the "trade date” or the "settlement date,” as those terms are used in the securities industry, is that which defines when an investor’s purchase is made, so as to give rise to claims against a broker or selling agent in connection with that acquisition, or whether neither applies when there is a gap between the acquisition and the closing of the underlying transaction, so that the six-year period begins to run only when the partnership is declared effective. As explained below, the trade date controls. While only a matter of days is involved, because respondents filed their claims beyond six years from the trade dates, although within six years of the settlement dates, they are barred from arbitration. Accordingly, the petitions are granted.
BACKGROUND
These proceedings were consolidated for motion disposition because they involve the same investment and address the same issues. Specifically, these proceedings arise out of Merrill Lynch’s 1987 sale to respondents of interests in a limited partnership known as Arvida/JMB Partners L.P. I (Arvida), which was formed for the purpose of acquiring and developing real estate. The form customer agreement between Merrill *426 Lynch and respondents, all residents of New York, provides that disputes between them shall be arbitrated pursuant to the rules of the New York Stock Exchange (NYSE) or the NASD, and that New York law governs. Just over six years after respondents directed their brokers at Merrill Lynch to purchase the interests on their behalf (the trade date), but within six years of their accounts being debited for the purchase price (the settlement date), they commenced arbitration proceedings against Merrill Lynch by filing uniform submission agreements and statements of claim with the NASD.[3]
The statements of claim variously allege breach of contractual and legal duties, unsuitability, common-law fraud, fraudulent concealment, breach of fiduciary duty and negligence. They also allege, among other things, that the Arvida prospectus was confusing and misleading as to the risks involved and, perhaps more significantly, that, through December 1991, the monthly account statements sent to respondents by Merrill Lynch concealed the rapid decline in Arvida’s value by setting forth the purchase price as the estimated value of the investments.
Merrill Lynch asserts that these claims are ineligible for submission to arbitration pursuant to section 15 of the NASD Code which provides: "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.”
In particular, Merrill Lynch contends that the event or occurrence giving rise to respondents’ claims is their purchase of their interests in Arvida which, it argues, occurred on the trade date, namely the date that respondents authorized Merrill Lynch to debit their accounts. Respondents counter that the trade date is not the event giving rise to their claims and propose three alternatives, namely, that their purchases occurred either on (i) the settlement date, that is, the date their accounts actually were debited or (ii) the date the partnership was "declared effective” and their funds were *427 released from escrow or, separately, (iii) that their claims arose on the date through which Merrill Lynch continued to make misrepresentations as to value. Respondents also argue that Merrill Lynch is barred by the doctrines of collateral, equitable, and judicial estoppel from asserting that the trade date governs.
The court therefore must determine what occurrence or event commenced the six-year period and, if it was the trade date, whether Merrill Lynch is estopped from asserting it as a defense to arbitration.
THE ARVIDA OFFERING
The issue of when respondents’ claims arose depends on the terms of the offering as detailed in the prospectus and the subscription agreement. The partnership offered 325,000 interests in Arvida at a purchase price of $1,000 per interest and required that each investor purchase a minimum of five interests. Purchasers either sent checks directly to Arvida or, as did respondents, authorized Merrill Lynch, as selling agent, to debit their brokerage accounts. The prospectus states that "Investors may subscribe Interests through Merrill Lynch * * * without executing the Subscription Agreement’s Signature Page”. The subscription agreement provides that "by authorizing Merrill Lynch * * * to debit the investor’s customer securities account, [the investor] hereby subscribes for the purchase” of the Arvida interests.
Once an investor subscribed, he or she was no longer "entitled to cancel, terminate or revoke [the] subscription”. The general partner, however, was not bound to accept the investor and, in addition, if a minimum subscription of 165,000 interests were not sold by November 30, 1987 all funds held in the escrow account, to which all payments were deposited, were to be returned. In subscribing, investors acknowledged that they had received and reviewed the prospectus although, apparently, none were mailed to investors until the day of or the day after the trade date.
After respondents authorized Merrill Lynch to proceed with their purchases (all of which occurred from late September through early October of 1987), confirmations were sent to them by Merrill Lynch. Within a week of the trade date, their accounts were debited. Upon receipt of the required number of subscriptions on October 30, 1987, the partnership became effective, and the funds in the escrow account were released.
*428 DISCUSSION
As a preliminary matter, whether respondents’ claims are eligible for arbitration under NASD § 15 is an issue for the courts, and not the arbitrators, to decide. (Merrill Lynch, Pierce, Fenner & Smith v DeChaine, 194 AD2d 472 [1st Dept], lv denied 82 NY2d 657 [1993] [interpreting the identically worded NYSE rule 603]; AT&T Technologies v Communications Workers, 475 US 643, 647 [1986] [holding that the question of arbitrability is for judicial determination].)
Moreover, most courts, including this one, have held that the event which triggers the six-year eligibility period is the investment in, or the purchase of, the relevant security.[4] (Kidder, Peabody & Co. v Marvin, NYLJ, Apr. 7, 1994, at 25, col 6 [Sup Ct, NY County, Crane, J.]; Merrill Lynch, Pierce, Fenner & Smith v Burke, NYLJ, Mar. 3, 1994, at 25, col 4 [Sup Ct, NY County, Solomon, J.]; Jones & Co. v Sorrells, 957 F2d 509 [7th Cir 1992]; but see, Painewebber Inc. v Farnam, 870 F2d 1286 [7th Cir 1989] [measuring six years from the end of employment of sales representative accused of wrongdoing].) However, these cases do not address the issue of when the purchase or investment occurs. Indeed, many of the New York Supreme Court decisions cited by Merrill Lynch measure six years from the settlement date based on the acquisition date shown on the customer’s monthly statements.
Matter of Prudential Bache Sec. v Archard (179 AD2d 652, 653 [2d Dept], lv denied 80 NY2d 754 [1992]) which, like the instant case, involved an investment in a limited partnership, provides some guidance. In Archard, the six-year eligibility period was found to commence when "respondents executed subscription agreements with respect to the purchase of limited partnership interests”. Merrill Lynch argues that Archard supports its position since, by the terms of the offering, respondents subscribed when they authorized Merrill Lynch to purchase the interests on their behalf. Respondents, on the other hand, assert that Archard is inapplicable here because they never signed a subscription agreement, and did not receive the prospectus (as required by its terms), until after they authorized Merrill Lynch to debit their accounts.
Merrill Lynch also contends that the definitions of "trade *429 date” contained in various publications demonstrate that respondents’ investments occurred on that day. (See, e.g., Scott, Wall Street Words, at 363 [1988] [defining trade date as "(t)he date on which an order is executed * * * Also called transaction date”]; Downes and Goodman, Barron’s Finance and Investment Handbook, at 507 [2d ed 1987] [defining trade date as the "day on which a security or a commodity future trade actually takes place”].) Respondents counter, without any supporting authority, that the trade date is "nothing more than the date Merrill Lynch solicited [Respondents to purchase units in the partnership.” Respondents also argue that the earliest date that they were committed to the transaction, and entitled to benefit from it, was on the day they paid for the interests.
The parties also look to cases involving Federal securities violations which arguably are relevant here because the Statute of Limitations for these claims, like the eligibility period under NASD § 15, commences at the time of the purchase or sale of the security. These authorities rely on the rule enunciated in Radiation Dynamics v Goldmuntz (464 F2d 876, 891 [2d Cir 1972]), that a purchase of a security occurs when "the parties * * * are committed to one another * * * even if [their] formal performance of their agreement is to be after a lapse of time.”[5] (464 F2d, at 891; see, Grondahl v Merritt & Harris, 964 F2d 1290, 1294 [2d Cir 1992] ["(t)he statute of limitations in federal securities law cases starts to run on the date the parties have committed themselves to complete the purchase or sale transaction” (citation omitted)]; Finkel v Stratton Corp., 962 F2d 169, 172 [2d Cir 1992] [holding that plaintiffs’ claims accrued when they "lost the ability to withdraw from the deal”]; Brantley v Hutton & Co., 710 F Supp 135, 140 [ED Pa 1989], appeal dismissed 904 F2d 693 [3d Cir 1990] [cause of action arose on date plaintiffs made an irrevocable commitment to purchase by signing the subscription agreement and writing a check]; Maxwell v LaBrunerie, 731 F Supp 358 [WD Mo 1989]; Amoroso v Southwestern Drilling Multi-Rig Partnership No. 1, 646 F Supp 141 [ND Cal 1986].) Merrill Lynch contends that these precedents support its *430 position that respondents purchased interests in Arvida on the trade date because that was the day on which they committed to the transaction.
Respondents, on the other hand, interpret the same law as holding that the purchase occurred only after they and the partnership were mutually committed, and thus argue that their claims did not accrue until October 30, 1987 when the partnership became effective, and their funds were released from escrow. Respondents also note that Maxwell and Amoroso (supra), cited by Merrill Lynch, measured the running of the Statute of Limitations from the time that the general partner countersigned the subscription agreements. Alternatively, they argue that their claims did not arise until December 1991 when Merrill Lynch ceased to misrepresent the value of their Arvida interests.
This court finds that respondents’ claims arose when they authorized Merrill Lynch to debit their accounts since that is the day on which they were induced by Merrill Lynch’s alleged wrongful conduct to irrevocably commit to purchase interests in Arvida. In contrast, the settlement date was simply the fulfillment of respondents’ earlier promise to pay. That respondents did not sign a subscription agreement is irrelevant since, by the terms of the offering, they effectively subscribed and could not withdraw from their commitment to purchase the interests when they authorized Merrill Lynch to debit their accounts. Furthermore, even if the prospectus should have been delivered to respondents prior to the trade date, this does not affect when the interests were purchased.
Additionally, respondents cite no authority supporting their argument that the purchase occurred when the partnership was declared effective. Indeed, case law interpreting when a cause of action accrues under the Federal securities laws consistently holds that the purchase of a security occurs once the parties are committed to perform and not upon full performance of the agreement. (See, e.g., Finkel v Stratton Corp., 962 F2d, supra, at 173 [holding that a sale occurs when "the parties obligate * * * themselves to perform what they had agreed to perform even if formal performance of their agreement is to be after a lapse of time” (citations omitted)]; Brantley v Hutton & Co., 710 F Supp, supra, at 140 [finding that purchase occurred when plaintiff executed subscription agreement and tendered check and not when partnership was formally activated]; Radiation Dynamics v Goldmuntz, 464 F2d, supra, at 891.) Here, respondents were committed to *431 purchase, and Merrill Lynch to sell, on the trade date, and the subsequent acceptance by the partnership is irrelevant.
Moreover, the authorities which measure the running of the Statute of Limitations from the date that a general partner countersigns a subscription agreement expressly reject respondents’ contention that the purchase occurs upon the partnership becoming effective. (See, Maxwell v LaBrunerie, 731 F Supp, supra, at 364; Amoroso v Southwestern Dwelling Multi-Rig Partnership No. 1, 646 F Supp, supra, at 144.) In any event, these cases are not controlling in light of New York authority holding that the purchase occurs upon the investor’s subscription. (See, Matter of Prudential Bache Sec. v Archard, 179 AD2d, supra, at 653; In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig., 815 F Supp 620, 649 [SD NY 1993]; Marlow v Gold, Fed Sec L Rep [CCH] f 96,112, at 90,633 [SD NY 1991] [finding that plaintiff’s claim arose on the date the alleged fraudulent conduct induced his purchase which was completed when he "executed the Subscription Documents”].)
Finally, Merrill Lynch’s alleged concealment, until December 1991, of the investment’s decline in value does not "re-trigger” the six-year period since no claim here arises from this alleged wrongdoing. Moreover, because the eligibility requirement is a substantive or jurisdictional limitation on arbitrability, and not a Statute of Limitations, it cannot be tolled by allegations that Merrill Lynch fraudulently concealed the declining value of the investments. (Merrill Lynch, Pierce, Fenner & Smith v DeChaine, 194 AD2d, supra, at 472.)
ESTOPPEL ARGUMENTS
Based on three discrete estoppel doctrines, respondents urge that, even if the trade date is the occurrence or event giving rise to their claims, Merrill Lynch may not assert it. These arguments, however, are unavailing.

1. Collateral Estoppel

Respondents’ argument that Merrill Lynch is collaterally estopped from arguing that their claims arose before the settlement date is based on the decision of Justice Stuart Cohen in Merrill Lynch, Pierce, Fenner & Smith v Mitrou, Sup Ct, NY County, Dec. 23, 1993, index No. 130757/93). In Mitrou, as here, Merrill Lynch sought to stay an arbitration proceeding commenced by an Arvida investor on the ground that the claims were ineligible for submission to arbitration.
*432 Justice Cohen held that "Merrill Lynch is precluded from now arguing that the purchase occurred earlier” than the date shown on its customers’ monthly statements. Merrill Lynch argues that I should not follow the Mitrou ruling because that decision did not determine the actual date that respondents’ claims arose but only that Merrill Lynch was precluded from arguing the issue and because, for unclear reasons, that decision was made just as Merrill Lynch submitted further papers on the subject.
"Collateral estoppel, or issue preclusion, may be invoked in a subsequent action or proceeding to prevent a party from relitigating an issue decided against that party in a prior adjudication.” (Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147, 152 [1988] [citations omitted].) Collateral estoppel applies where (1) an identical issue was necessarily decided in the prior action and is decisive in the present action, and (2) there has been a full and fair opportunity to litigate the issue. (Supra, at 153.) However, the doctrine is not rigidly applied. Instead, the court considers "competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results.” (Supra; see also, Katz v Lilly & Co., 84 FRD 378, 381 [ED NY 1979] [collateral estoppel is an equitable doctrine and should not be applied inflexibly].) In view of these principles, the Mitrou decision (supra) does not prevent my consideration of the "trade date v settlement date” issue, particularly since Merrill Lynch and its opponent should be afforded the fullest opportunity to litigate their dispute.
2. Equitable Estoppel
Respondents assert that Merrill Lynch is equitably es-topped from arguing that their claims accrued on the trade date because the monthly statements show the settlement date as the date of purchase. Unlike equitable tolling which "deals with when the statute of limitations begins to run, [e]quitable estoppel acknowledges that the statute has run, but is invoked to estop the defendant from asserting the defense because defendant’s actions lulled the plaintiff into forbearing from bringing suit within the period of limitations.” (Bloomenfeld, Securities Law Handbook § 30.02, at 30-20 [1994 ed].) However, equitable estoppel is inapplicable here. The eligibility requirement is a limitation on the arbitrator’s subject matter jurisdiction and, accordingly, estoppel principles do not apply. (See, Long Is. Radio Co. v National Labor *433 Relations Bd., 841 F2d 474, 478 [2d Cir 1988] [dismissing plaintiffs application for attorneys’ fees under the Equal Justice Act as untimely, even though the NLRB initially granted an extension, because the Act’s deadline for filing of the claim was a limitation on the agency’s subject matter jurisdiction].)
In addition, the facts here do not support equitable estoppel, as reliance on the monthly statements was unreasonable since respondents (and their counsel) knew or, with reasonable diligence, should have discovered the actual purchase dates. (See, 75 NY Jur 2d, Limitations and Laches, § 31, at 203 ["due diligence * * * is an essential element of equitable estoppel”].) Also, there is no suggestion that Merrill Lynch issued the monthly statements to induce the universe of potential respondents to refrain from complaining in the proper forum until the six-year anniversary of a settlement date rather than a trade date. (See, Kalabakas v New York City Hous. Auth., 131 Misc 2d 975, 978 [Civ Ct, NY City 1986] ["(t)o function as an estoppel, a communication must contain, explicitly or implicitly, a request or at least an invitation to refrain from (suit)”].)

3. Judicial Estoppel

Finally, respondents contend that Merrill Lynch is judicially estopped from asserting that the trade date controls since in other cases in which it sought stays of arbitration it relied on the settlement date. This argument, too, is without merit.
Judicial estoppel applies to a party who has secured a judgment in its favor by taking a certain position and subsequently seeks to assume a contrary position. (Environmental Concern v Larchwood Constr. Corp., 101 AD2d 591, 593 [2d Dept 1984].) The purpose of the doctrine, also known as estoppel against inconsistent positions, is to prevent litigants from playing "fast and loose” with the courts. (Matter of Transrol Navega Cao, 782 F Supp 848, 852 [SD NY 1991] [citations omitted].) This doctrine is inapplicable here since, in the proceedings referred to by respondents, Merrill Lynch did not contend that the investors’ claims arose on the settlement date and not the trade date. Rather, the issue was irrelevant for those proceedings were brought more than six years after the later, settlement dates.
*434 CONCLUSION
In light of the above, the cross motions to dismiss or to compel arbitration are without merit and the requests for sanctions accordingly fall, the petitions are granted and arbitration of respondents’ claim is stayed permanently.
[Portions of opinion omitted for purposes of publication.]

. Merrill Lynch moved by order to show cause so as to temporarily stay the arbitrations pending a resolution of these applications for permanent stays.

. Petitioner also sought to bar arbitration of punitive damages and attorneys’ fee claims because New York law does not permit them; they have been withdrawn with prejudice.

. The date stamped transmittal letters from respondents’ counsel to the NASD indicate that respondents commenced arbitration within six years of the debiting of their accounts and Merrill Lynch’s assertions to the contrary, based solely on hearsay statements regarding its counsel’s conversations with NASD personnel, are without merit.

. Of course, acts of wrongdoing which are distinct from the alleged misconduct which induced the purchase may give rise to a claim which accrues after the date of the initial investment. (See, Painewebber Inc. v Hofmann, 984 F2d 1372 [3d Cir 1993].)

. Although its holding has been adopted by courts to analyze when a cause of action accrues under the Federal securities laws, Radiation Dynamics (supra) concerns the issue of what is the proper date to determine materiality of information used by an insider for the purposes of section 10 (b) of the Securities Exchange Act of 1934 and rule 10b-5 of the Securities Exchange Commission.