**FORD MOTOR CREDIT COMPANY,**
Plaintiff,

v.

**Donald MILLER, Wendell Miller, and
Madeleine Miller, Defendants.**

No. 94–CV–1395.

United States District Court,
N.D. New York.

Jan. 21, 1998.

Deily, Dautel & Mooney, LLP, Albany, NY (Jonathan D. Deily, Mark D. Glastetter, of counsel), for Plaintiff.

Coughlin & Gerhart, LLP, Binghamton, NY (Peter H. Bouman, of counsel), for Defendants Wendell Miller and Madeline Miller.

Law Offices of John W. Young, Binghamton, NY (John W. Young, of counsel), for Defendant Donald Miller.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Ford Motor Credit Company ("Ford Credit") instituted this diversity action against certain officers, employees and stockholders of Miller Lincoln Mercury, Inc. (the "Dealer"). In brief, Ford Credit seeks to recover upon an unlimited guarantee executed by defendants. Ford Credit also seeks attorneys' fees and costs. Now before the Court is Ford Credit's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendants, in turn, assert that they have no liability for the Dealer's default. Specifically, defendants contend the Guarantee Agreement is unenforceable, relying on the doctrines of (1) unconscionability and (2) equitable estoppel. Defendants further contend that, in any event, summary judgment cannot be granted on the issue of damages because there exist substantial questions of fact relating to the proper damage amount.

For the reasons set forth below, Ford Credit's motion for summary judgment is granted.

## I. BACKGROUND

On June 24, 1982, the defendants [1] executed and delivered to Ford Credit a "Continuing Guarantee" (the "Guarantee"). Pursuant to the Guarantee, each of the defendants jointly and severally agreed to assume any present and future obligations of the Dealer in the event of the Dealer's default.[2] The

---

1. Until February 1993, defendant Wendell Miller served as the President of the Dealer, defendant Madeleine Miller served as the Secretary, and defendant Donald Miller served as the General Manager and Vice President. Defendants owned 100% of the Dealer's issued stock.

2. The Guaranty provides, in pertinent part:

[E]ach of the undersigned Guarantors hereby, jointly and severally, and unconditionally, guaranties to you [Ford Credit], your successors or assigns that the Dealer will fully, promptly and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and agrees, without your first having to proceed against Dealer or to liquidate paper or any security therefor, to pay on

Guarantee further provided that it would remain in effect until Ford Credit received written termination of the guarantee by registered mail.

Thereafter, the Dealer became obligated to Ford Credit pursuant to various wholesale plans and other credit facilities. On February 2, 1993, the Dealer defaulted on its obligations to Ford Credit.[3]

On February 10, 1993, the defendants wrote a letter to Ford Credit, authorizing Ford Credit to take possession of certain items of collateral pursuant to various security agreements. The letter also acknowledged that defendants were guarantors on the indebtedness of the Dealer and that nothing therein modified or discharged their obligations pursuant to the Guarantee.

As a defense to the enforcement of the Guarantee, defendants contend that on July 3, 1990, a Ford Credit employee, Margaret Spadara, advised Donald Miller that no personal guaranties existed. Defendants also contend that they never received copies of the Guarantee and that Ford Credit never mentioned the Guarantee until 1993.

## II. DISCUSSION

### A. Standard For Summary Judgment

The standard for summary judgment is well-settled. A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The initial burden is to demonstrate "that there is

an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See id.* at 322. The test for existence of a genuine dispute is whether a reasonable juror could find for the nonmoving party; that is, whether the nonmovant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and quotations omitted).

It is with the foregoing standards in mind that the Court addresses the issues presented.

### B. Defendant Donald Miller

■ Initially, the Court must address a matter of local procedure relating to defendant Donald Miller ("Donald"). In opposing summary judgment, Donald has submitted only his own affidavit. He did not submit, as

---

demand all sums due and to become due to you from Dealer and all losses, costs, attorney's fees or expenses which you may suffer by reason of Dealer's default.

**3.** On March 25, 1993, the Dealer filed for bankruptcy under Chapter 7 of the Bankruptcy Code.

required by the Local Rules of the Northern District, either a Rule 7.1(f) statement or a memorandum of law. *See* Local Rules 7.1(c) & 7.1(f) of the Northern District of New York. Local Rule 7.1(b)(3) provides that in such instances, the party is deemed by the Court to consent to the granting of the motion, unless good cause is shown why these papers were not filed. Because Donald provides no explanation to the Court for his failure to file the required papers, Ford Credit's motion for summary judgment against Donald is granted in its entirety.[4] *See Cossack v. Burns,* 970 F.Supp. 108, 111 (N.D.N.Y.1997).

### C. Defendants Wendell Miller and Madeleine Miller

It is not disputed that defendants executed a Guarantee to Ford Credit, whereby defendants jointly and severally agreed to assume the obligations of the Dealer in the event of the Dealer's default. The Dealer defaulted on its obligations to Ford Credit in February 1993, and Ford Credit instituted the instant action to recover upon the Guarantee. The question before the Court is thus whether the Guarantee is enforceable.

■ New York courts recognize the enforceability of guarantee agreements. *See, e.g., Apple Bank for Savings v. Aries Stripping, Inc.,* 658 N.Y.S.2d 682, 683 (2d Dep't), *modified on other grounds,* — A.D.2d —, — N.Y.S.2d — [1997 WL 583086] (2d Dep't 1997); *General Elec. Capital Corp. v. A–Drive Corp.,* 233 A.D.2d 365, 650 N.Y.S.2d 583, 583 (2d Dep't 1996). When, as here, a plaintiff establishes both the existence of a guarantee and the default and nonpayment by the debtor, plaintiff is entitled to judgment. *Ihmels v. Kahn,* 126 A.D.2d 701, 511 N.Y.S.2d 306 (2d Dep't 1987).

Defendants urge the Court not to enforce the instant Guarantee, however, relying on the doctrines of unconscionability and equitable estoppel as defenses. Neither doctrine applies to this case.

**4.** In any event, summary judgment against Donald is required for the same reasons explained in

#### (i) Unconscionability

■ "[T]he doctrine of unconscionability, which is based on public policy considerations, has been defined as contractual overreaching, imposition, oppressiveness, or patent unfairness." 22 N.Y.Jur.2d *Contracts* § 156, at 192 (1996). The doctrine applies to those instances where a contract's terms are oppressive to one party (*i.e.,* substantive unconscionability) or when a contract results from an unequal bargaining process (*i.e.,* procedural unconscionability). *Sablosky v. Edward S. Gordon Co., Inc.,* 73 N.Y.2d 133, 138, 538 N.Y.S.2d 513, 535 N.E.2d 643 (1989); *People v. Two Wheel Corp.,* 71 N.Y.2d 693, 699, 530 N.Y.S.2d 46, 525 N.E.2d 692 (1988).

■ In the present case, defendants state their defense of unconscionability as follows:

It is claimed that in this case that the plaintiff's silence on the existence of a guaranty, its negative answers when asked if such a document existed and the long, silent period of time between its alleged execution and the attempted enforcement deprived the [defendants] of their right to terminate the alleged obligation.

Defendants' Memorandum of Law, at 4. It is evident that defendants' reliance on the doctrine of unconscionability is misplaced. These allegations are better suited for a defense of equitable estoppel. Thus, the Court addresses these allegations below.

#### (ii) Equitable Estoppel

■ Defendants assert that the above allegations also give rise to a defense of equitable estoppel. Equitable estoppel, simply put, "is some inequitable or fraudulent conduct engaged in by the party sought to be estopped which is reasonably relied upon by the other party to his detriment." 57 N.Y.Jur.2d *Estoppel, Ratification, and Waiver Evidence and Witnesses* 15, at 18–19 (1996); *Broadworth Realty Assocs. v. Chock 336 B'way Operating, Inc.,* 168 A.D.2d 299, 562 N.Y.S.2d 630, 632 (1st Dep't 1990); *appeal denied,* 77 N.Y.2d 808, 570 N.Y.S.2d 488, 573 N.E.2d 576 (1991).

part II(C) of the opinion.

■ In the present case, defendants' claim of equitable estoppel fails as a matter of law. Taking defendants' allegations in turn, there is no support for defendants' head-snapping proposition that a contract is unenforceable simply because one party fails to send the other periodic reminders of the contract. Neither is a guarantee unenforceable because of a lapse of time. *See, e.g., Chemical Bank v. Sepler,* 60 N.Y.2d 289, 294, 469 N.Y.S.2d 609, 457 N.E.2d 714 (1983); *The Travelers Indem. Co. v. Buffalo Motor & Generator Corp.,* 58 A.D.2d 978, 397 N.Y.S.2d 257, 258 (4th Dep't 1977). This is especially so in this case, as defendants' entered into a contract called a "Continuing Guarantee," which by its terms could be terminated only by notice sent to plaintiff by registered mail. *See id.* Defendants admit that they never terminated the Guarantee by registered mail. Thus, for defendants to argue that Ford Credit should be estopped from enforcing the contract due to lapse of time, or the failure of plaintiff to remind them of their guarantee obligation, is unavailing.

■ Defendants also rest their estoppel defense on allegations that a Ford Credit employee told Donald that no guarantees existed. According to defendants, this deprived them of their right to terminate the Guarantee because defendants believed that no guarantee existed. The Ford Credit employee asserts, however, that she never advised Donald that no personal guarantees existed.

Although this fact is in dispute, it is not material to this case because it does not affect the outcome. That is, even if the Courts assumes defendants' allegation are true, as it must, *General Elec. Co. v. New York State Dept. of Labor,* 936 F.2d 1448, 1452 (2d Cir.1991), the guarantee still would be enforceable. *See, e.g. Anderson,* 477 U.S. at 248 (stating that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment"). Here, defendants signed a guarantee that had not been terminated prior to Donald's conversation with Spadara. Thus, after Donald told defendants that he had been told by a Ford Credit employee that no guarantees

existed, defendants should have confirmed this information with Ford Credit. Defendants, after all, are sophisticated businessman. They knew or should have known that, under the contract, the guarantee could only be terminated by registered mail. They admit that they never sent a termination notice via registered mail. Defendants also knew or should have known that if no personal guarantees existed, Ford Credit might terminate their credit facilities. Notwithstanding, defendants made no independent attempt to verify whether the guarantee had been terminated. Under these circumstances, it was not reasonable for defendants to rely on the unconfirmed statement of Donald that the guarantees were no longer effective. *See, e.g., In the Matter of Lewis S. Southwick,* 127 A.D.2d 662, 511 N.Y.S.2d 888, 889, *appeal denied,* 69 N.Y.2d 611, 517 N.Y.S.2d 1026, 511 N.E.2d 85 (1987); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ohnuma,* 161 Misc.2d 423, 613 N.Y.S.2d 811, 816 (Sup. Ct.1994), *rev'd on other grounds,* 218 A.D.2d 572, 630 N.Y.S.2d 724 (1st Dep't 1995).

Furthermore, defendants plainly could with reasonable diligence have ascertained whether the guarantees had been terminated. *Id.; City of New York v. New York City Omnibus Corp.,* 84 N.Y.S.2d 616, 625 (Sup. Ct.1948) ("one who claims the benefit of an estoppel must act with reasonable diligence"). There are, in sum, no equities compelling the application of equitable estoppel. Defendants presumably read the terms of the Guarantee they signed, which specifically stated that termination of the guarantee could be made only by notice sent to Ford Credit. The Court, therefore, finds that a defense of equitable estoppel is not available as a matter of law.

In short, there does not remain for trial any genuine issue of material fact whether the guarantee is enforceable. Thus, the Court concludes that defendants must honor their personal guarantees to Ford Credit, which impose joint and several liability on defendants for both the Dealer's indebtedness to Ford Credit and the reasonable attorneys' fees and costs that Ford Credit has suffered by reason of the Dealer's default.

### D. Damages

■ The remaining issue is whether there exists a genuine issue of material fact with respect to damages. According to the affidavit and accompanying exhibits of Richard Lundberg, a collection analyst at Ford Credit, the Dealer is indebted to Ford Credit in the amount of $1,042,386.26,[5] as of August 31, 1997. This figure includes interest calculated at a rate of 13.75% per annum, as provided for in the financing and security agreement between the Dealer and Ford Credit.[6] The figure also includes application of all credits resulting from the disposition of collateral, and all non-legal expenses. It does not include any credit for a pending settlement in the bankruptcy proceeding involving the Dealer, in which the Dealer proposes to pay Ford Credit the sum of $282,-496.22.

■ Defendants assert objections to awarding these damages to Ford Credit on summary judgment. The thrust of defendants' argument is that because the Dealer's records were taken when the defendants consented to Ford Credit taking temporary possession of the Dealer's premises for purposes of preserving and disposing of the collateral, defendants cannot verify the amount of the Dealer's indebtedness. This argument is specious. Even assuming that defendants' records "were taken from them," defendants still had ample opportunity to engage in discovery relating to this issue. The mere fact that defendants did not utilize the discovery devices available in federal court does not, without more, require the Court to reopen discovery on this issue. Defendants' other objections are similarly without merit.

■ Lastly, Ford Credit seeks attorneys' fees and costs. A guarantee that provides for attorneys' fees is enforceable under New York law. *Torres & Leonard, P.C. v. Select Professional Realties, Ltd.*, 118 A.D.2d 467, 499 N.Y.S.2d 707, 709 (1st Dep't 1986); *Manufacturers & Traders Trust Co. v. Franz*, 46 A.D.2d 161, 361 N.Y.S.2d 782, 784 (4th Dep't 1974). Plaintiff's lawyer, Jonathan Deily, has submitted an affidavit and exhibit detailing the total amount of attorneys' fees and expenses at $103,603.46. This figure includes work performed not only on this case but also in related actions in the New York Court of Claims and bankruptcy court. Because the Guarantee provides that defendants are liable for "all losses, costs, attorney's fees or expenses which [Ford Credit] may suffer by reason of the dealer's default," the Court may award attorneys' fees for these related actions. *See Kitrosser v. CIT Group/Factoring, Inc.*, 1995 WL 567115, at *4 (S.D.N.Y. Sept.25, 1995) (permitting plaintiff to recover attorneys' fees from related bankruptcy action). After review, the Court finds that attorneys' fees and costs in the amount of $103,603.46 are reasonable.

In sum, there exists no factual dispute to prevent a finding of the amount of damages to which Ford Credit is entitled under the guarantees. Accordingly, defendants are jointly and severally liable for the sum of $1,042,386.26, plus interest of 13.75% per annum after August 31, 1997.[7] Ford Credit also is entitled to attorneys' fees and costs in the amount of $103,603.46.

### III. CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is GRANTED. The Court hereby orders plaintiff to submit a proposed order, by February 2, 1998, calculating the interest on the indebtedness after August 31, 1997. Upon ap-

---

5. Specifically, Lundberg arrived at this figure by adding together the unpaid indebtedness of the Dealer of $706,001.46, the computed contractual default rate of interest on the unpaid balance of the Dealer's obligations as of August 31, 1997 of $334,073.49, and plaintiff's non-legal expenses of $2,311.31.

6. As guarantors, defendant are liable for interest charges assessed by contract against the debtor. *Bryant Park Bldg v. Richmond*, 85 N.Y.S.2d 531 (Sup.Ct.1948); *Pro–Specialties, Inc. v. Thomas Funding Corp.*, 812 F.2d 797, 800 (2d Cir.1987). Here, a financing and security agreement between Ford Credit and the Dealer provided that each advance made by Ford Credit to the Dealer would bear an interest rate 4 percentage points higher than the pre-default rate (*i.e.*, 9.75% plus 4% = 13.75%).

7. Any post-judgment interest, of course, will be calculated as provided in 28 U.S.C. § 1961.

proval of that order, the Clerk shall enter judgment in favor of plaintiff and against defendants, jointly and severally, in the amount of $1,042,386.26, plus the amount of accrued interest after August 31, 1997. The Clerk also shall enter judgment in favor of plaintiff and against defendants, jointly and severally, in the amount of $103,603.46, for reasonable attorneys' fees and costs.

**IT IS SO ORDERED.**